219 F.2d 133
 CONTINENTAL CASUALTY COMPANY, Appellant,
v.
Gennie PADGETT, as Administratrix of the Estate of Felix Padgett, Jr., deceased; William Pope Cook, as Administrator of the Estate of William Taylor, deceased, and Gilbert Harrelson, Appellees.
 No. 6889.
 United States Court of Appeals, Fourth Circuit.
 Argued January 7, 1955.
 Decided February 3, 1955.
 
 E. W. Mullins, Columbia, S. C. (Nelson, Mullins & Grier, Columbia, S. C., on the brief), for appellant.
 Robert McC. Figg, Jr., Charleston, S. C. (Brown, Jefferies & Mazursky, Barnwell, S. C., R. K. Wise, A. Birge Wise, Jr., Edwin H. Cooper, M. Boyd Neeley, Columbia, S. C., on the brief), for appellees.
 Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 The decision in this case turns on the interpretation of the omnibus clause of an automobile policy issued to Boineau's, Inc., a South Carolina corporation, wherein the following provision was made: "The unqualified word `insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named assured, or with his permission." The policy covered an automobile truck that was involved in an accident in which an employee of the insured and five companions, while riding in the truck on a pleasure jaunt, were killed in a head-on collision with a Greyhound bus at 2:35 A.M. on Sunday, March 15, 1953 in the town of Eau Claire near Columbia, South Carolina.
 
 
 2
 Continental Casualty Company, the insurer, brought suit for a declaratory judgment against the administrator of the estate of William Taylor, the employee of Boineau's who was driving the truck at the time of the accident, and against the administratrix of the estate of Felix Padgett, Jr., one of the passengers in the truck at the time, and against Gilbert Harrelson, the driver of the bus. The administratrix of Padgett had previously brought suit in a state court against Boineau's and the administrator of Taylor, and had called upon the insurance company to defend the action under the provisions of the policy requiring the company to defend suits on behalf of the insured even though the suits may be groundless; and Gilbert Harrelson, who was badly hurt in the collision, had employed counsel to bring suit against Boineau's and Taylor's estate.
 
 
 3
 The purpose of the instant suit was to secure an adjudication that the policy did not cover the estate of Taylor because he was driving the truck at the time of the accident without the permission of the insured, and therefore the company was not obligated to defend the suit against his estate or to pay any judgment that might be rendered on account of the accident.
 
 
 4
 The case was submitted to a jury upon evidence which may be summarized as follows: Boineau's was engaged in the moving and storage of goods and household furniture at Columbia, South Carolina, and used the truck in its business. Ordinarily the truck was in charge of an employee by the name of William Frierson who kept it over the week-end and also picked up employees every workday morning at a street corner in Columbia where Boineau's was formerly located and carried them to Boineau's new location in the city. On the Saturday preceding the accident Frierson went out of town and Taylor asked and was given permission to use the truck to carry scrap lumber or dunnage, accumulated in the course of the business and usually distributed among the employees, to his mother. Taylor was instructed by an officer of the corporation to take the scrap lumber to his mother in the truck, and after unloading it to bring the truck back and park and leave it on the street at the accustomed place until the following Monday morning, and then to pick up the employees and bring them to his employer's plant. Taylor was asked at the time whether he desired to park the truck in front of his house over the week-end but he declined because it would entail the payment by him of parking fees and he agreed to park the truck at the old site and pick up the men on Monday morning.
 
 
 5
 In accordance with these instructions Taylor used the truck to carry the wood to his mother and unloaded it with the help of another employee and then drove the latter down town, saying that he was going to park the truck. During Saturday afternoon, between the hours of 1:30 P.M. and 6:30 P.M., the truck was seen by a number of persons at the accustomed site. It was next seen at the time and place of the accident under circumstances from which the reasonable inference is drawn that it was being used for the pleasure of the occupants.
 
 
 6
 Upon this evidence which is not disputed, the Casualty Company moved for a directed verdict on the ground that the evidence showed that Taylor did not have permission to drive the truck at the time of the accident; but the judge rejected the motion and submitted the case to the jury charging them that the evidence showed that Taylor did not have express permission to use the truck at the time of the accident and that the sole issue for the jury to determine was whether he had the implied consent of the insured to use the truck at that time. He further charged the jury that the words of the policy under consideration covered a person making use of the car for purposes of his own, if it was delivered to him with the permission of the named assured, although the car was driven to a place or for a purpose not within the contemplation of the assured when he parted with possession; and that express permission for a given purpose is implied permission for all purposes. Under these instructions the jury, as it was obliged to do, answered in the affirmative the question whether Taylor, at the time of the collision, was driving the truck with the implied consent of the assured, and upon this verdict judgment was entered for the defendants.
 
 
 7
 Authority in support of the opinion of the District Judge, 123 F.Supp. 847, may be found in the decisions of the courts of certain states, but in our view the judgment cannot be sustained in the absence of a controlling decision of the Supreme Court of South Carolina which has not yet had occasion to consider the specific question. It is true that in South Carolina, as elsewhere, language in an insurance policy which may be understood in more senses than one, or is doubtful, must be construed in favor of the policy holder and against the insurer; Eaves v. Progressive Fire Ins. Co., 217 S.C. 365, 60 S.E.2d 687; but we find no ambiguity in the policy of the Casualty Company as applied to the facts of the case. The language of the omnibus clause, which brings within the coverage of the policy any one who uses the insured vehicle with the permission of the assured, is clear enough. Equally clear is the undisputed testimony that Taylor was given permission to use the car for a specific purpose for his own convenience after business hours on a particular Saturday, and that after this purpose had been served, he was to park the car at a designated spot so that it might be available on Monday morning for the purposes of his employer. All this he did and thereby his use went to the full extent of the permission; but thereafter he violated his instructions, removed the car from the parking place and made use of it, not in the business of his employer but for the pleasure of himself and his friends. It is plain, unless the words of the contract are distorted from their clear and normal meaning, that the fatal ride was not made with the permission of the insured within the meaning of the policy.
 
 
 8
 We have had occasion to consider like questions on a number of prior occasions and have not been inclined to narrow the scope of the omnibus clause. For example, in Chatfield v. Farm Bureau Mut. Auto. Ins. Co., 4 Cir., 208 F.2d 250, we held that the trial court was right in submitting to the jury the question whether the permission of an insured, who was incapacitated by illness to use his car, might be implied from the consent of his wife; and speaking through Judge Dobie we said, at page 256,
 
 
 9
 "Our own decisions, we think, show a strong tendency toward a liberal interpretation, in favor of the insured, of the `omnibus clause.' This clause should not be construed and applied, from a purely analytical viewpoint, under a literal interpretation of the words of the policy. The spirit, not the letter, should control. Statutes requiring the insertion of the `omnibus clause' in automobile liability policies reflect a clear cut policy to protect the public. They should be construed and applied so as to carry out this policy."
 
 
 10
 See also Harrison v. Carroll, 4 Cir., 139 F.2d 427; Travelers Indemnity Co. v. Neal, 4 Cir., 176 F.2d 380; American Auto Ins. Co. v. Fulcher, 4 Cir., 201 F.2d 751; cf. U. S. Fidelity & Guaranty Co. v. Mann, 4 Cir., 73 F.2d 465; Jordan v. Shelby Mut. Plate Glass & Cas. Co., 4 Cir., 142 F.2d 52; Hopson v. Shelby Mut. Cas. Co., 4 Cir., 203 F.2d 434.
 
 
 11
 In a number of these cases the controlling authority was the law of Virginia as laid down by the decisions of its highest court, and we have found ourselves in accord with its views as to the correct interpretation of the clause in question. In Travelers Indemnity Co. v. Neal, supra, a Virginia case, we held that it was proper to submit to the jury the question whether permission to an employee to drive the insured vehicle to a particular church was broad enough to cover a further journey to another church during which an accident occurred. We quoted with approval, 176 F.2d 384, the following language of the Supreme Court of Appeals of Virginia relating to the conflict of decisions on this question in State Farm Mut. Auto. Ins. Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 5 A.L.R.2d 594:
 
 
 12
 "`This has brought about two schools of judicial thought as to the matter with which we are now concerned. Some courts take the view, broadly stated, that express permission for a given purpose implies permission for all purposes. Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368, and annotation beginning at page 1375; Dickinson v. Maryland Cas. Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500.
 
 
 13
 "`Other courts adhere to a somewhat stricter construction and hold that before the person using the automobile becomes an additional assured under the omnibus clause, permission must be expressly or impliedly given for that use. See cases cited in annotation, supra, 72 A.L.R. at page 1403.
 
 
 14
 "`We hold to the latter view in Virginia. In Sordelett v. Mercer, 185 Va. 823, 40 S.E.2d 289, 294, we said (185 Va. 835) in reference to the meaning of the concluding sentence of section 4326a involved here that "the express or implied permission referred to in the statute means the express or implied permission to use or operate the motor vehicle either in the business of the owner or for any other purpose for which express permission was given or as to which it may be implied that permission was given. Permission to do a specific thing is not permission to do all things." To the same effect are Phoenix Indemnity Co. v. Anderson, 170 Va. 406, 196 S.E. 629; Jordan v. Shelby Mut. Plate Glass, etc., Co., 4 Cir., 142 F.2d 52; Frederiksen v. Employers' Liability Assur. Corp., 9 Cir., 26 F.2d 76.'"
 
 
 15
 To this discussion we added the following comment:
 
 
 16
 "We do not read this opinion as repudiating the so-called `liberal rule' * * * interpreting the omnibus clause statute. Mr. Justice Browning was merely repudiating (we think quite properly) the rule that `express permission for a given purpose implies permission for all purposes.' And the Jordan case (together with other cases supporting a liberal rule of construction here) was cited with approval. And further on in his opinion, 186 Va. at page 666, 43 S.E.2d at page 867, Mr. Justice Browning was careful in stating: `The trend in Virginia of legislative enactment as well as judicial determination and construction has been towards liberalizing and broadening the coverage provision of liability insurance policies.'" (Italics ours.)
 
 
 17
 The decisions mentioned in the last cited case which take the so-called liberal or extreme view[1] have been again pressed upon us on this appeal and have been again considered; but we find ourselves unable to follow them. In the absence of legislation requiring automobile policies to provide for broader coverage than is afforded by the usual omnibus clause, we do not feel justified in extending the terms of the insurance contract beyond its plain meaning.
 
 
 18
 The judgment of the District Court will therefore be reversed and the case remanded for further proceedings.
 
 
 19
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 See the annotation to State Farm Mut. Auto. Ins. Co. v. Cook, supra, in 5 A.L. R.2d 594, 629
 Even in states whose decisions are cited as examples of the so-called "liberal rule" it is not uniformly held that permission to use the insured vehicle for one purpose amounts to permission to use it for all purposes. For example, in Tennessee, Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368, which is usually cited for its liberal application of the rule, was followed by Moore v. Liberty Mut. Ins. Co., 193 Tenn. 519, 246 S.W.2d 960, in which it was held that the omnibus clause did not furnish coverage for an employee who was given permission to use a truck to haul furniture for a member of his family and instead drove 30 miles out of town with a friend, and under the influence of intoxicating liquor, was involved in a wreck. Likewise the much cited case of Dickinson v. Maryland Cas. Co., 101 Conn. 369, 125 A. 866, 41 A. L.R. 500, was followed by Mycek v. Hartford Acc. & Ind. Co., 128 Conn. 140, 20 A.2d 735, in which liability of the insurer was denied where an employee was given permission to use a truck for business purposes to transport employees from one location to another during the work day, and one evening was involved in an accident when he used the truck in a trip to a nearby town for his own purposes. Compare also the decision of Rikowski v. Fidelity & Casualty Co., 117 N.J.L. 407, 189 A. 102 with Penza v. Century Indemnity Co., 119 N.J.L. 446, 197 A. 29.