The **MASON & DIXON LINES**,
Incorporated, Appellant,

v.

**Harry S. MARTIN**, Administrator of the Estate of Oscar Miller Martin, deceased, Aetna Casualty and Surety Company, and Billy Howard, Appellees.

No. 6967.

United States Court of Appeals
Fourth Circuit.

Argued April 22, 1955.

Decided May 16, 1955.

---

1. Gooch v. Oregon Short Line Ry., 258 U.S. 22, 42 S.Ct. 192, 66 L.Ed. 443.

Ted Dalton and James C. Turk, Radford (Dalton, Poff & Turk, Radford, Va., on brief), for appellant.

W. H. Jolly, Salem, Va. (R. S. Kime, Salem, Va., on brief), for appellee Aetna Casualty and Surety Co.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The Mason and Dixon Lines, Inc., a Tennessee corporation, recovered a judgment in the court below against Harry S. Martin, administrator of the estate of Oscar M. Martin, in the amount of $3,047.42 for damage to one of its tractor-trailers in a collision which occurred in Montgomery County, Virginia at approximately 6 A.M. on May 9, 1950. Oscar M. Martin was driving a Ford automobile involved in the accident of which William M. Howard was the owner-insured and the Aetna Casualty and Surety Company was the insurer. The judgment against Martin not being satisfied, Mason and Dixon Lines now seek in the instant suit to recover the amount of the judgment from Aetna by virtue of the omnibus clause in its policy. This clause brings within the protection of the policy not only the named insured but also any person while using the automobile—provided the actual use of the automobile is by the named insured or with his permission. The decision in this case depends upon whether or not Martin was driving Howard's car with his permission, express or implied, at the time of the accident. At the close of the plaintiff's case in the trial below the District Court directed a verdict in favor of the defendant, Aetna Casualty and Surety Company, and this appeal followed.

It is conceded that Howard did not give Martin express permission to drive the car, the sole question being whether the facts, viewed in a light most favorable to the plaintiff, present sufficient proof of implied permission to require the submission of this issue to the jury. It is our opinion that, accepting every reasonable inference that can be drawn from the evidence, implied permission to drive the car is not shown, and that the direction of the verdict in favor of Aetna should be affirmed.

The evidence on this point may be summarized as follows: Howard and Martin had been good friends for a number of years prior to the accident which cost Martin his life. Martin was raised in Montgomery County, Virginia and, at the time of his death was a member of the United States Air Force. In December, 1949 he came home for a 30 day furlough. During this period he, his brother Allen Martin, Howard and occasionally one or two others were constant companions. They frequented different inns and taverns and were together most of the time for one social function or another. Howard's automobile provided the mode of transportation for these excursions, and although Howard usually did the driving, Martin and his brother Allen also drove at times.

A few months later, in April, 1950, Martin was again home for a 21 day furlough. To be near his friends he stayed at the Virginian Hotel in Christiansburg and once again the social whirl began. Martin was a free spender and paid for much of the food and drink consumed by the boys. Howard's automobile again afforded them transportation with Martin and his brother Allen once more doing some of the driving, when Howard was in the car. On the day preceding the fatal accident the social activities began about 8:30 A.M.

The boys spent the day visiting various places and, during their travels, "drank a few beers." That evening, about seven o'clock, the wheel of the car was put in Martin's hands and he drove for the remainder of the night. The usual round of taverns was made until, late that evening—testimony as to the exact time is conflicting—the group arrived at an all night restaurant. Every one, except Howard, who remained in the car, went in and obtained something to eat. Martin, according to the proprietor, appeared quite sober, while the others were showing some of the effects of their long day. Upon leaving the restaurant they returned to the Virginian Hotel in Christiansburg where all were staying that night. Howard, before leaving or being removed from the car, was placed under arrest by two peace officers for public drunkenness. He and a local attorney, who arrived on the scene and tried to interfere, were taken to jail which was but a short distance away. According to one estimate it was then almost 4 A.M. Apparently, at the request of the local attorney who had just become involved in the case, Martin brought the car to the jail. This is the only time that any one drove the car without Howard being present, and the obvious purpose in this instance was to serve his convenience.

Howard was soon released from jail, and returned to the hotel. He and Allen Martin shared one room while Oscar Martin and a fourth man shared another room on the same floor. Just before Howard retired Martin returned the car keys to him. The Mason and Dixon Lines take issue with this statement but Howard stated positively that the keys were returned and there is no evidence to the contrary. Allen Martin, the only other witness who is alive and was present at the time, testified that he did not know whether they were returned or not. Howard then went to bed and the record is silent as to how Martin regained possession of the keys. The next thing we know is that at approximately 6 A.M. Martin was driving the car alone a few miles outside Christiansburg and was killed in the collision.

His purpose in having the automobile at that time is unknown but one thing is certain, he did not have Howard's express permission to use the car at that time; and it cannot be assumed that Martin was using the car at the time for Howard's benefit. Moreover, any prior use of the car by Martin had always been for the mutual benefit of Howard and himself. Much emphasis is placed on their close relationship through the years and especially during the period immediately preceding the accident; but we cannot hold that friendship alone implies permission to use another's car for one's own purpose. Martin's previous use of the car had always been in Howard's presence while in this instance he drove the car, for what purpose only he knew.

Numerous cases have been cited but they do not support appellant's position. The liberal view adopted by Virginia in such matters is laudable but no case is cited which justifies a reversal in the case before us. See Robinson v. Fidelity & Casualty Co. of New York, 190 Va. 368, 57 S.E.2d 93, where the use to which the car was being put was for the benefit of one who stood in the shoes of the named insured; Hinton v. Indemnity Ins. Co., 175 Va. 205, 8 S.E.2d 279, where there was evidence that the owner knew in advance of the use made of the car, and State Farm Mutual Automobile Ins. Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 5 A.L.R.2d 594, where there was evidence that the owner had acquiesced in a similar use prior to the accident. In such cases the courts often state that the course of conduct between the parties implies consent in the particular instance; but we cannot make that statement in this case.

This court has had occasion to rule in a number of cases on whether or not the evidence of implied permission was such that the issue should have been submitted to the jury. Two cases which have gone further than any others in this circuit in holding that such issue

was a question of fact are American Auto. Ins. Co. v. Fulcher, 4 Cir., 201 F.2d 751, and Chatfield v. Farm Bureau Mut. Auto. Ins. Co., 4 Cir., 208 F.2d 250. In each case, however, there was a family relationship involved and there was some evidence that the car was being used for the benefit of the owner. Permissive use of a car does not require evidence that the car was being used for the owner's advantage, but, as shown in the foregoing cases, many courts consider such evidence as indicative of implied permission. In the present case there is no such evidence, and as far as Howard was concerned the keys were in his possession and he had no reason to believe that any one would use the car. See also Jordan v. Shelby Mut. Plate Glass & Cas. Co., 4 Cir., 142 F.2d 52; Continental Casualty Co. v. Padgett, 4 Cir., 219 F.2d 133.

We conclude that the District Judge was correct in ruling as a matter of law that Mason and Dixon Lines, Inc. had failed to prove that Martin had the implied permission of Howard to drive the car at the time of the accident.

Affirmed.