AMERICAN AUTO. INS. CO. v. FULCHER.

No. 6530.

United States Court of Appeals Fourth Circuit.

Argued Jan. 9, 1953.

Decided Feb. 17, 1953.

James G. Martin, IV, Norfolk, Va., for appellee and cross-appellant.

Harry E. McCoy, Jr., Norfolk, Va., (Hughes, Little & Seawell, Norfolk, Va., on the brief), for appellant and cross-appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

These are cross-appeals from a judgment of the United States District Court for the Eastern District of Virginia in favor of the plaintiff administrator in an action on a liability insurance policy issued by the defendant. The action was originally instituted in the Circuit Court of Norfolk, Virginia, but was removed to the District Court.

On August 7, 1946, Barbara M. Fulcher was killed in an automobile accident in the City of Norfolk, Virginia, when the car in which she was a passenger was struck by an automobile owned by Fred Green and operated by his brother, George Green. At the time of the accident, Fred Green was incarcerated in the Norfolk City Jail. Earlier in the evening George Green, who lived in Baltimore, Maryland, had visited the home of his uncle, who lived in Norfolk and with whom Fred resided. Upon learning of his brother's predicament, George conceived the idea of going down to the City Jail to see if he could effect Fred Green's release. For this purpose, he and several friends who were with him employed Fred's car, which was parked in front of his uncle's house.

Being unsuccessful in their efforts to free Fred Green, or even to see or talk to him at the Jail, George and his friends decided to visit the home of Fred's prosecutrix in an effort to induce her to withdraw her charge against him. This mission also proved unsuccessful and George Green suggested that they drive to his mother's home in Norfolk County to arrange for her presence at Fred's trial, which was scheduled for the following morning. At this point, George first became the driver of his brother's car which theretofore had been driven by one of his friends, and it was while on this journey that the collision occurred.

Subsequently plaintiff, as administrator of the estate of Barbara M. Fulcher, instituted suit in the Circuit Court of the City of Norfolk against George and Fred Green to recover damages for the death of his intestate. The case was tried before a jury on April 25, 1950. At the conclusion of the plaintiff's evidence, the trial court sustained a motion by defendants' counsel to strike the evidence as to Fred Green, and the jury returned a verdict for $15,000 in favor of the plaintiff against George Green only. Judgment was entered on the verdict and has now become final.

After execution on this judgment had been returned "no effects," the plaintiff administrator initiated this action to recover from the defendant insurance company, on the theory that George Green was an additional insured under the terms of the liability insurance policy issued to Fred Green. The defendant entered a plea of *res adjudicata* and denied that at the time of the accident George Green was driving Fred Green's car with permission of the owner. The District Judge held that the judgment of the State Court in favor of Fred Green was not *res adjudicata* of the issue before the District Court and found that at the time of the accident George Green was operating his brother's car with the implied permission of its owner. Accordingly, judgment was entered against the defendant for $15,000 and costs, with interest from the date of the judgment. Despite plaintiff's request, the District Court refused to allow interest from the date of the State Court's judgment, April 25, 1950, and denied plaintiff his costs in the State Court.

From this judgment both parties have appealed, and the questions presented thereby are:

(1) Is the judgment in favor of the owner Fred Green in the State Court *res adjudicata* as to the liability of the defendant in this Court?

(2) Was George Green operating the automobile of Fred Green at the time of the accident with the permission, express or implied, of the owner?

(3) Should the District Court allow to plaintiff administrator interest on the $15,000.00 judgment of the State Court from April 25, 1950, until paid, and his costs in that Court?

These questions will be considered in the order given. The Virginia Statutes applicable to the instant controversy and pertinent to the resolution of the first two issues raised on appeal, provide:

Code of Virginia (1950) Section 38–238. "* * * No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, *in the business of such owner* or otherwise, by any person legally using or operating the same *with the permission, express or implied, of such owner*." (Italics ours.)

Code of Virginia (1950) Section 46–492. "46–492. Coverage of owner's policy.—Every owner's policy shall:

\* \* \* \* \* \*

"(2) Insure as insured the person named and any other person using or responsible for the use of the motor vehicle or motor vehicles with the permission of the named insured, * *."

## Res Adjudicata

The Court below rejected the plea of *res adjudicata* for three reasons:

(1) The parties to the State Court action were different; the defendant insurance company was not a party to the State Court proceedings.

(2) The issues were different in the State Court action.

(3) The State Court action was based on tort, whereas this action is based on an insurance policy or contract.

In view of our conclusion, we consider it necessary to discuss only the second of these reasons.

In order to recover against Fred Green in the State Court, it was necessary for the plaintiff to show that at the time of the accident, George Green, who was driving the automobile, was acting as Fred Green's agent. The action there, as to Fred Green, was based upon a theory of common law agency, and the plaintiff was required to prove that George Green was driving the car with the consent of Fred Green *and* upon the business of Fred Green. Both of these concomitant elements of agency must have concurred to establish Fred Green's personal liability in that action.

As the District Judge noted in his opinion, the action in the State Court "was dismissed as to Fred Green because at the time of the accident George Green was not using the automobile by and with the consent of the said Fred Green *and* upon the business of the said Fred Green." (Italics ours.) By striking the plaintiff's evidence as to Fred Green, the State Court did not indicate whether that evidence had failed of proof on either or both of these elements. The effect of this ruling was simply that the plaintiff's evidence was insufficient to support a jury finding that *both* of these elements *together* had been proven.

The instant action, unlike that in the State Court, is not one which seeks to establish the vicarious personal liability of a principal upon a theory of common law agency. The case at bar is a simple action on a contract, and to recover against the defendant insurance company, it is not incumbent upon the plaintiff to prove an affirmative consent on the part of Fred Green to the use of his car, or that the car was being used on his business. The only issue before the District Court was whether or not at the time of the accident, George Green was driving Fred Green's car with his permission, express or implied, within the terms of the contract and the meaning of the applicable Virginia statutes.

We think the observation of the Supreme Court of Virginia in Gilmer v. Brown, 186 Va. 630, 636, 44 S.E.2d 16, 18–19, is particularly pertinent to this question:

"(1, 2) Judicial estoppel and *res judicata* are frequently used interchangeably and have the same significance. Estoppel, because it concludes a party from alleging the truth, must be certain to every intent and its scope should not be extended by argument or inference.

"(3) 'It is essential to an estoppel by record that the identical question upon which it is invoked was in issue in the former proceeding.

" '* * * "There must be an identity of issues, and by this is meant that the issue raised in the second suit, upon which the evidential force of the former judgment is to be directed, must be identical with the issue, or one of the issues, raised and determined in the first action." ' Chesapeake, etc. Ry. Co. v. Rison, 99 Va. 18, 34, 35, 37 S.E. 320".

■ It is clear that the issues in the two actions here in question are not identical. The evidence available to the plaintiff in the State Court was insufficient to show the high degree of relationship between owner and driver amounting to agency. In the District Court agency was not an issue, and the burden of proof on the plaintiff to show permission, express or implied, which was the only essential to a recovery under the contract of insurance, was considerably reduced. Consequently, the very same evidence which proved inadequate to establish the personal liability of Fred Green in the State Court, might well prove sufficient to fix liability upon the defendant insurance company in the District Court.

The differences between the mere permissive use by a third person of an owner's car with the consent of the owner and the use of the car by a third person as the agent of the owner can be made clear by an example. Thus A lends his car to B for a trip to be made solely for B's benefit. On the trip, C is hurt by B's negligent operation of the car. Clearly here, B is an additional insured under A's motor liability policy; and equally clear is it that B is not A's agent and A incurs no liability to C.

The defendant contends that one whose liability is dependent upon that of another, who has already been exonerated in an earlier suit by the same plaintiff on the same facts, may plead the earlier judgment as a bar to his own liability although he was not a party to that action. This contention is inconsistent with the theory of the case at bar. Plaintiff here does not seek to trace the liability of the insurance company through any antecedent liability of Fred Green. Rather it is the plaintiff's position that, pursuant to the Virginia law and the terms of the insurance policy issued to Fred Green, if George Green was driving Fred Green's car with his permission at the time of the accident, then George Green is an additional insured under the policy and no exoneration of Fred Green bears on the issue. Indeed, as plaintiff concedes. the State Court judgment in favor of Fred Green may be considered *res adjudicata* as to his personal liability in this matter; yet it is in no sense *res adjudicata* as to the liability of the defendant insurance company in this forum.

For the foregoing reasons, we are of the opinion that there was no error on the part of the District Judge in rejecting the plea of *res adjudicata*.

Implied Permission.

On this issue, the evidence of the plaintiff tended to show that several days before the accident, Fred Green took his car to a garage for repairs; that he was told that he would have to bring the car back another day; that he thereupon informed the garage operator that he anticipated his arrest by the legal authorities in the near future and that he would send the car back by his brother, George Green; and that on the day preceding the accident George Green drove the car to the shop and, pursuant to the authority of Fred Green, asked that it be repaired. The evidence further indicated that after the repairs had been made on that day, the garage operator received a phone call from Fred Green, in jail, asking whether his brother had brought the car to the shop, and that on the very day of the accident, George Green drove by the garage to report that the car was running satisfactorily. The plaintiff also introduced in evidence a written power of attorney from Fred to George Green, dated June 26, 1946, relating to the signing of registration and ownership certificates required by law.

The evidence of the defendant, on the other hand, tended to show that George Green was a merchant seaman employed aboard the steam tanker Pan Delaware at

the time of the accident; that on the evening of the accident he arrived in Norfolk for the first time in two years; that at no time during that evening did he or any of his associates see or talk to Fred Green at the jail; and that Fred Green had no knowledge that his brother or anyone else was using his car on the night in question.

It is settled law that the question of implied permission is one of fact, to be resolved by the jury or the court sitting as the trier of fact. Moreover, the Virginia decisions make it clear that the statutes applicable to the present controversy, being remedial in nature, are to be liberally construed to subserve the public policy manifest therein. See Fidelity & Casualty Co. of New York v. Harlow, 191 Va. 64, 68, 59 S.E.2d 872, 874; State Farm Mutual Automobile Insurance Co. v. Cook, 186 Va. 658, 666, 43 S.E.2d 863, 867, 5 A.L.R.2d 594. It is also evident that, to support liability predicated upon implied permission, it is not necessary that the owner of the automobile be aware of the identity of the person operating it. Robinson v. Fidelity & Casualty Co. of New York, 190 Va. 368, 57 S.E.2d 93; or know of the particular use being made of it at the time of the accident. Liberty Mutual Insurance Co. v. Tiller, 189 Va. 544, 53 S.E.2d 814.

In view of the conflict in the evidence, and the broad interpretation placed upon the statutes, we think that the question of implied permission was one properly to be resolved by the trial court. Even if we exclude those portions of the plaintiff's evidence tending to establish express consent (which the District Judge found it unnecessary to consider), the existence of implied consent still finds substantial support in the record. The car involved in the accident had been left standing in front of the owner's residence and the keys thereto were readily available to all members of the household, who, in concert, employed the car in the interest of the owner. At the time of the accident the car was being driven by the owner's brother on a trip directly related to the owner's plight.

On the whole, we are satisfied that the decision of the lower court was not clearly erroneous and must therefore be sustained. Nor do the cases relied upon by the defendant contain anything to disturb our conclusion. In those cases, there was either no evidentiary basis, even when viewed in the most favorable light, to justify a finding of implied permission, Hartford Accident & Indemnity Co. v. Peach, 193 Va. 260, 68 S.E.2d 520; or the evidence disclosed that the driver was driving under circumstances tantamount to a specific denial of permission. See Fidelity & Casualty Co. of New York v. Harlow, supra; U. S. Casualty Co. v. Bain, 191 Va. 717, 62 S.E.2d 814.

Interest and Costs.

This brings us to the consideration of whether the plaintiff in this action is entitled to interest from the date of the State Court judgment and his costs in that forum; if so, may the amount of the total recovery against the defendant exceed the $15,000 stipulated as the limitation of liability in the policy in question.

The general rule on the subject is succinctly stated in 45 C.J.S., Insurance, § 930, p. 1050—*Insurance against Liability:*

"Where the insurance is against liability, as distinguished from insurance against loss actually paid, the insurance company becomes liable as soon as the insured becomes liable to the injured person, although under some policies no liability attaches to the insurance company until rendition of judgment or agreement between the parties with the consent of insurer."

The policy upon which the present case is brought contained a provision to the effect that no action should lie against the insurance company until the amount of the insured's obligation to pay should have been finally determined either by judgment or written agreement of the insured, the claimant and the Company. It has been held that, under policies containing provisions substantially similar to this, the insurer becomes liable to pay a personal injury judgment against the insured on the day it is rendered, with interest thereon from that date, Savery v. Kist, 234 Iowa 98, 11 N.W.2d 23; see also Ohio Casualty Ins. Co. v. Beckwith, 5 Cir., 74 F.2d 75.

The District Court found (as we have indicated, properly so) that at the time of the accident George Green was driving the automobile of Fred Green, the name insured, with his implied permission and that George Green was therefore an additional insured within the scope of the policy. Since judgment was obtained against George Green in the State Court on April 25, 1950, it is clear that under the terms of the policy the insurance company became liable for the payment of the judgment as of that date. In view of the cases cited, it also became liable for the payment of interest on the judgment from the date of its rendition.

It is also true, in the case of liability insurance, that the insurer is liable for the payment of interest even though such payment makes the total amount due more than the amount limited by the policy. Cudahy Packing Co. v. New Amsterdam Casualty Co., C.C., 132 F. 623; Rumford Falls Paper Co. v. Fidelity & Casualty Co., 92 Me. 574, 43 A. 503. In Cannon Mfg. Co. v. Employers' Indemnity Co., 161 N.C. 19, 23, 76 S.E. 536, 537–538, where an insurer was held liable for interest and costs in excess of the limits of the policy, the court, commenting upon the nature of this additional liability, said:

"The interest in question is awarded by law as damages for non-payment of money when due. * * * The interest in question does not represent any liability on account of or for the accident or the policy, but is a liability imposed by law for the delay of the defendant in paying the judgment which, as between the parties, it was legally obligated to pay."

An analogous situation involving liability on a surety bond was presented in New Amsterdam Casualty Co. v. U. S. Shipping Board, 4 Cir., 16 F.2d 847. There, Judge Parker, speaking for this Court, observed, 16 F.2d at page 852:

"There can be no doubt that upon withholding payment it (the company) became liable for the amount due with interest from the time when it was its duty to have made payment, even though the addition of the interest causes the recovery to exceed the penalty of the bond."

It is clear, we think, that the liability stipulated in the policy is a contractual one relating solely to the risks insured against, and that it in no way affects the payment of interest on the judgment, which is a liability imposed by law. Nor does the obligation to pay interest impose any additional loss upon the insurance company. From the date the insured's liability became fixed, here April 25, 1950, the insurance company has been holding to its own use money rightfully due to the plaintiff. Manifestly there is no injustice in requiring it to account for the principal sum due, plus interest, when payment is finally made.

We are therefore of the opinion that the District Court erred in not permitting interest on the judgment from April 25, 1950. We also think that the plaintiff should have been allowed to recover the costs awarded him in the State Court. The policy before us contains the usual "cooperation" clause requiring the insured to assist the Company in affecting settlements, securing evidence, obtaining witnesses, and in conducting suits. It appears that these obligations have been met, and that the defense in the State Court action was conducted by the insurance company. The plaintiff here stands in the same position insured would have acquired if the insured had paid the judgment of the State Court and then sued the defendant. Seaboard Mut. Casualty Co. v. Profit, 4 Cir., 108 F.2d 597, 126 A.L.R. 1105. It is clear that, in such a case, insured would be entitled to recover his costs against the insurer.

The judgment will therefore be reversed and the cause remanded for the entry of an appropriate order in respect to interest and costs. In all other respects, the judgment is affirmed.

Affirmed in part; reversed in part.